In the
United States Court of Appeals
For the Seventh Circuit

Nos. 00-3971, 00-4066 & 00-4221

United States of America,

Plaintiff-Appellee, Cross-Appellant,

v.

Robert R. Krilich, Sr.,

Defendant-Appellant, Cross-Appellee.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 94 CR 419--David H. Coar, Judge.

Submitted March 10, 2001/*--Decided July 16, 2001

Before Easterbrook, Ripple, and Evans,
Circuit Judges.

Easterbrook, Circuit Judge.  Robert Krilich's criminal case is on appeal for a third time. He has been convicted of racketeering and other offenses related to a scheme that included bribery of public officials in order to obtain assistance in the approval and financing of construction projects. In 1998 we affirmed Krilich's convictions but on the United States' cross-appeal remanded for resentencing. See United States v. Krilich, 159 F.3d 1020 (7th Cir. 1998). See also United States v. Krilich, 178 F.3d 859 (7th Cir. 1999) (reversing an order releasing Krilich on bail). Krilich's original sentence was 64 months' imprisonment. On remand the district court imposed a sentence of 87 months. Once again, both sides complain.

What occasioned the remand is a dispute about the application of the table in U.S.S.G. sec.2F1.1(b)(1) to add levels to the calculation of Krilich's offense severity. One aspect of Krilich's offense was co-opting a local government to spon sor tax-free industrial revenue bonds, some proceeds of which were used to finance a project (and other proceeds of which were diverted to Krilich's personal benefit). The prosecutor argued that the gain to Krilich from this offense should be measured by the difference between

what he paid in interest on the bonds, and the higher payments that would have been necessary had the interest been taxable to the investors (as it should have been). The district judge did not resolve the parties' dispute about valuation, ruling instead that no matter how the matter came out he would allow only seven levels from this table, departing on the authority of Application Note 7(b) to sec.2F1.1. (This has become Note 8(b) in the latest version of the Guidelines, but we use the former numbering for consistency with our prior opinions.) We held that this procedure was unauthorized and remanded for the imposition of a sentence based on the table in sec.2F1.1(b)(1). 159 F.3d at 1029-31. Although downward departure could not be excluded as a possibility, we held, the procedure must start with an accurate calculation.

A different district judge imposed sentence on remand. After a hearing that lasted almost three weeks, the court concluded that the gain Krilich had reaped by offering tax-free bonds (and correspondingly the loss to the Treasury) was approximately $14 million, which added 15 offense levels under the table in sec.2F1.1. This produced a total offense level of 32 and a presumptive sentencing range of 135 to 168 months' imprisonment. The judge concluded that the offense level of 32 did not "significantly overstate" the seriousness of Krilich's crime, and the court therefore held that departure under Application Note 7(b) is unwarranted. Nonetheless, the court granted Krilich a significant downward departure of five offense levels for health reasons. The level 27 sentencing range is 78-97 months, and the district judge chose a sentence in the middle of that range. Krilich contends that his sentence is too high, the United States that it is too low.

Krilich contests every aspect of the district court's findings. His principal contention is that the $14 million figure for his gain (and the Treasury's loss) is flawed because it supposes that he would have raised the same amount of money with taxable bonds had he lacked access to tax-free instruments. Higher interest rates could have led to a change of plans, for demand curves slope downward

and an increase in the price of one project leads an entrepreneur like Krilich to shift to another. That much cannot be denied, but the Guidelines do not determine a wrongdoer's gain based on what-if scenarios. Imagine a bank robber who argues that, had he known about the presence of a guard, he would have robbed a grocery store instead and thus caused a lower loss. It is hard enough to tote up the gains and losses from crimes actually committed without pursuing second-best solutions, which are usually indeterminate. The gain and loss rules in the Guidelines call for approximations, not exact figures. See sec.2F1.1 Application Note 8 (now Note 9). Krilich did get access to tax-free bonds, raising $135 million that he held for 12 years. Some of this money he used for construction or consumption, and the rest he reinvested at higher interest. A similar kitty lent by investors who had to pay taxes on interest would have cost Krilich much more than what he actually paid in interest. Under the Guidelines the buck stops there. The district court's finding that the gain was $14 million is supported by the record (which includes the calculations of an expert in finance) and cannot be called a clear error. None of Krilich's other objections to the conclusion that his gain exceeds $10 million is persuasive; we see no need to add to the district court's analysis. And Krilich's contention that the district court should have departed under Application Note 7(b) goes nowhere; the judge understood the existence of (and limits on) that authority, and the decision that this is not an appropriate occasion for departure cannot be reviewed by this court. United States v. Franz, 886 F.2d 973 (7th Cir. 1989).

   At the time of the resentencing hearing early in 2000, Krilich was 69 years old and had age-related medical problems. The district court concluded, on the basis of a psychiatrist's testimony (yes, a psychiatrist; no cardiologist testified), that Krilich has four physical infirmities: chronic cardiovascular disease, chronic peripheral vascular disease with hypertension, obstructive pulmonary disease, and lower back pain of lumbar and lumbosacral origin. The court gave Krilich a one-level departure for each of these four, and a fifth level for the four in combination.

The United States' argument that consideration of this subject was barred by the terms of our remand is not correct. The district court found that Krilich's medical condition had deteriorated since his original sentencing, and changed circumstances are a standard reason for consideration of additional issues on a remand. See United States v. Buckley, No. 00-3845 (7th Cir. May 24, 2001). It remains necessary, however, to determine whether the district judge abused his discretion.

The judge acknowledged that none of the four physical problems would justify a departure standing alone but believed that the combination does so:

I specifically do not find that . . . the Bureau of Prisons is unable to adequately treat the defendant's ailments. Nevertheless, contrary to the government's position, the defendant presented a medical profile outside the heartland of people remanded to the custody of the Bureau of Prisons. . . . Krilich's health issues present an unusual profile. The conditions of confinement will undoubtedly aggravate his conditions and make treatment more difficult. Therefore, a departure is warranted. . . . [These conditions create] treatment and quality of life difficulties that fall outside the heartland.

The judge reached this conclusion despite finding that "there is no structural reason why Krilich cannot receive adequate care within the [Bureau of Prisons]". Ten months after announcing the 87-month sentence, the district court held another hearing at which Krilich argued, with the support of two cardiologists (neither of whom had examined him or was familiar with the medical care available in federal prisons), that an even greater departure was warranted. This hearing was unauthorized, because the district judge no longer had the authority to alter Krilich's sentence, see 18 U.S.C. sec.3582(c) and Fed. R. Crim. P. 35, but was harmless, for the judge ultimately concluded that the cardiologists had added nothing to what was already in the record.

Relying on U.S.S.G. sec.5H1.4, the United States contends that an "unusual [medical] profile" is not a valid ground for departure. Section 5H1.1 says that age may not be the basis of departure unless the defendant is "elderly and infirm", referring for further guidance to sec.5H1.4, which provides:

Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. However, an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

Does Krilich have an "extraordinary physical impairment"? Is he "elderly and infirm" or "seriously infirm"? The district court did not find so; instead the judge apparently believed that any "unusual" medical condition or combination of conditions justifies a departure. That can't be reconciled with the first sentence of sec.5H1.4. "Extraordinary" is a subset of "unusual." We have held that the limit to "extraordinary" conditions must be taken seriously. See United States v. Woody, 55 F.3d 1257, 1275-76 & n.15 (7th Cir. 1995).

Almost everyone is "unusual" in some respect, and many septuagenarians have conditions similar to Krilich's. Yet sec.5H1.1 and sec.5H1.4 put normal age-related features off limits as grounds for reduced sentences. Older criminals do not receive sentencing discounts. Many persons in poor health are confined in federal prisons. If the medical problem is extraordinary in the sense that prison medical facilities cannot cope with it, then a departure may be appropriate. See United States v. Sherman, 53 F.3d 782, 787 (7th Cir. 1995). To justify such a conclusion, however, the court "must ascertain, through competent medical testimony, that the defendant needs constant medical care, or that the care he does need will not be available to him should he be incarcerated." United States v. Albarron, 233 F.3d 972, 978 (7th Cir. 2000). Or a bedridden person would be as effectively imprisoned at home as in a

jail; the physical condition itself does the imprisoning. But the district court found that the Bureau of Prisons could treat Krilich's conditions, and he is not bedridden, so these rationales for departure are missing.

An ailment also might usefully be called "extraordinary" if it is substantially more dangerous for prisoners than non-prisoners. Then imprisonment would shorten the defendant's life span, making a given term a more harsh punishment than the same term for a healthy person. A district court properly may reduce the sentence's length when necessary to equalize severity. See United States v. Gee, 226 F.3d 885, 902 (7th Cir. 2000). Cf. United States v. Guzman, 236 F.3d 830 (7th Cir. 2001). The district judge not only did not make such a finding for Krilich but also believed that this finding could not be sustained. Approximately 4,000 persons in federal custody receive care for cardiovascular conditions, and no evidence of record demonstrates that they exhibit greater mortality than free persons with these conditions.

The Bureau of Prisons can provide Krilich with the medical regimen (which is to say, the drugs and diet) that his physicians believe to be appropriate. That the Bureau has not provided (and does not propose to provide) the quality of care that top private specialists provide is neither here nor there; wealthy defendants can afford exceptional care, but this does not curtail the punishment for their crimes. Krilich did not establish that his condition is either "debilitating" or "extraordinary," and a departure therefore conflicts with norms established by sec.5H1.1 and sec.5H1.4. A generic statement that a defendant's circumstances are out of the "heartland" may not be used to override limitations written into the Guidelines. See Koon v. United States, 518 U.S. 81, 92-96 (1996); Krilich, 159 F.3d at 1030. Krilich's sentence therefore is again vacated, and the case is remanded with instructions to impose a sentence in the range of 135 to 168 months.

FOOTNOTE

/* These cross-appeals have been submitted under Operating Procedure 6(b) to the panel that decid-

ed prior appeals in the case. The panel has concluded that additional oral argument is unnecessary.