**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Martinez HORNE, Defendant–Appellant.**

No. 01–2975.

United States Court of Appeals, Seventh Circuit.

Argued April 1, 2002.

Decided Aug. 21, 2002.

Before EASTERBROOK, DIANE P. WOOD, EVANS, Circuit Judges.

### ORDER

On the evening of November 20, 2000, a Rock Island, Illinois, police officer made a routine traffic stop of Martinez Horne. In the course of that encounter, the officer found that Horne had with him a 3–inch cut plastic drinking straw with a white powdery residue inside it, 10.7 grams of crack cocaine and 25.2 grams of heroin. Horne eventually was charged with possession with intent to distribute at least 5

grams of a mixture and substance containing cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii) and 18 U.S.C. § 2. He entered a conditional guilty plea after the district court denied his motion to suppress evidence, reserving his right to appeal the district court's suppression order. The district court sentenced Horne to 292 months and a five-year term of supervised release. Horne now appeals the district court's denial of his motion to suppress and his sentence. We affirm.

Horne was stopped by Deputy Ron Erickson at approximately 10:24 p.m. on the night in question. After observing Horne make a complete stop for two to three seconds at a green light, Erickson followed Horne, believing that the temporary stop violated the Illinois motor vehicle code. At the same time, he ran a registration check of the vehicle and confirmed that it was registered to Mary Horne of Moline, Illinois. Erickson then asked his department dispatcher to run a warrant check to determine whether there were any males with the last name of "Horne" who had outstanding warrants for their arrest; the dispatcher advised Erickson that there were six male "Hornes" with arrest warrants. Although Erickson temporarily lost sight of the vehicle, when he saw it again he observed it make a left turn without first turning on its left turn signal. At that point Erickson stopped the vehicle.

Erickson asked Horne for his driver's license and proof of insurance. Horne cooperated: he told Erickson his name and date of birth and, according to Erickson, "most likely" provided his proof of insurance card. Horne did not have his license with him, but after running a license check, Erickson confirmed that Horne did indeed have a valid driver's license and that he had no arrest warrants in his name.

When Erickson returned to Horne's car, he asked Horne if he had any "illegal contraband on his person." Horne said no. Erickson then asked if he could search Horne, and Horne consented. When Erickson searched the right front pocket of Horne's sweatshirt, he found $2,199 in cash and a 3″ cut plastic drinking straw that appeared to have a white powdery residue inside. Erickson believed the straw to be the drug paraphernalia covered by Illinois's class A misdemeanor statute on that topic. Erickson did not field test the straw, even though he had a field test kit in his squad car, because he was concerned that he might "destroy the integrity of the evidence." He decided, however, to detain Horne while he investigated further.

Erickson next asked Horne if he had any illegal contraband inside his vehicle. Horne again said no. After Erickson told Horne he was going to check the vehicle, Horne became nervous and told Erickson that he had only given him permission to search his person, not his car. Erickson explained to Horne that his possession of drug paraphernalia provided the officer with probable cause to search the vehicle. Erickson then proceeded to conduct a search of the vehicle without Horne's consent and without a warrant. This search turned up 10.7 grams of crack cocaine and 25.2 grams of heroin.

At that point, Erickson handcuffed Horne and transported him to the Rock Island County Sheriff's Department. After their arrival, Erickson administered the standard *Miranda* warnings to Horne. He then advised Horne that he had worked in undercover narcotics with the Quad City Metropolitan Enforcement Group and that if Horne was interested in helping his case out Erickson "could put him in line with one of the agents to discuss further narcotics investigations." Horne agreed to speak with Erickson himself.

Erickson then asked Horne about the crack cocaine and the straw and if Horne snorted cocaine. Horne stated that he was a heroin addict and that he used approximately 2 grams of heroin a day. Erickson also asked Horne about the money he found in his pocket. Horne told Erickson that "on a good day," he sold $1,500 worth of crack and on a "bad day" he sold $500 worth of crack. He admitted that he had been selling for over a year. He told Erickson that the $2,000 or so that he had been carrying with him showed that he had had a "good day."

At a hearing on Horne's motion to suppress, Horne argued that Erickson lacked probable cause to believe that Horne's vehicle contained contraband, and thus that he was not authorized to conduct the nonconsensual search. He also argued that the Illinois Drug Paraphernalia Control Act did not apply to the straw Erickson had discovered. The district court denied the motion to suppress, and, as we stated earlier, Horne entered a conditional guilty plea on March 30, 2001, reserving his right to appeal the district court's order pursuant to Fed.R.Crim.P. 11(a)(2).

Horne also objected to the Presentence Report. The PSR recommended that Horne be sentenced to between 292 and 365 months of imprisonment based upon 4.6 kilograms, which was the total quantity for "relevant conduct" purposes calculated on the basis of one year's worth of sales divided between "good days" and "bad days," as Horne had put it in his post-arrest statements. Horne argued that the Guidelines did not apply to low-level drug dealers like him, relying on *United States v. Genao*, 831 F.Supp. 246 (S.D.N.Y.1993), *aff'd*, 43 F.3d 1458 (2d Cir.1994) (table). He maintained that under *Genao*, the district court could depart downward if it concluded that the two issues Horne was raising had not been considered by the Sentencing Commission: 1) that the use of the "preponderance of the evidence" standard of proof for relevant conduct findings had the effect of substantially increasing the sentence under the Sentencing Guidelines and 2) that the total amount of drugs chargeable was distributed over a substantial period of time. The district court rejected Horne's objections and denied his motion for downward departure. The district court then sentenced Horne to 292 months' imprisonment.

Although Horne makes several arguments relating to the questioning during the stop and the search of his person and car, we may dispose quickly of his claim that he was unlawfully seized when Erickson questioned him on a matter outside the scope of the purpose of the stop. This argument is foreclosed by *United States v. Childs*, 277 F.3d 947 (7th Cir.2002) (*en banc*). In *Childs*, we held that questioning during a traffic stop does not need to be related to the purpose of the stop. Horne concedes that Erickson's questions did not extend the stop beyond a reasonably brief period, and he raises no other argument that would render the custody unreasonable after *Childs*. Horne consented to the initial search of his person, and Erickson reasonably searched his car after finding the straw, which he recognized as make-shift drug paraphernalia laced with drugs, and the almost $2,200 in cash.

Turning to Horne's challenge to his sentence, we conclude that the district court did not err when it refused to depart downward from the Guideline range. We review a district court's legal determination of the scope of the Guidelines *de novo*, *United States v. Yoon*, 128 F.3d 515, 529 (7th Cir.1997), but we do not have jurisdiction to review a district court's denial of a discretionary sentence departure, *United States v. Crucean*, 241 F.3d 895 (7th Cir. 2001).

Generally, the district court must impose a sentence within the range produced

by the Guidelines. An exception exists, however, if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described," departure is appropriate. 18 U.S.C. § 3553(b); *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). This does not mean that "a generic statement that a defendant's circumstances are out of the 'heartland'" may be used to circumvent the Guidelines. *United States v. Krilich,* 257 F.3d 689, 694 (7th Cir.2001). But if a district court refuses to depart, erroneously believing that it may not even consider a factor, this court will reverse and remand to provide the district court with an opportunity to exercise its discretion. *United States v. Hirsch,* 280 F.3d 811 (7th Cir. 2002).

Initially, we must ensure that we have appellate jurisdiction. Jurisdiction exists to correct legal errors in the application of the Guidelines, but we have no jurisdiction to review a district court's discretionary refusal to depart downward. Horne argues, and we agree, that this appeal presents more than a challenge to an exercise of discretion. Horne's sole argument challenging his sentence is that the district court erroneously believed it did not have the legal authority to depart downward from the guideline range in his case. This is the kind of question that is reviewable.

On the merits, however, we disagree with Horne's characterization of the district court's remarks. Before imposing the sentence, the judge briefly discussed the history of the Sentencing Guidelines and the debate that had taken place between the advocates of "crime of conviction" sentencing and "relevant conduct" or "real offense" sentencing. He also commented that a national discussion of sentencing policy would be desirable, but then he returned to the case at hand, noted that his personal views of sentencing policy were beside the point, and held as follows:

I do not believe that an exercise of discretion in this respect under these circumstances would be appropriate. I do not believe that this is outside the heartland. I do not believe that it is a situation on which the Sentencing Commission was silent.

The district court went on to explain in detail why it believed the issue Horne raised was already considered by the Guidelines. It is plain that the court knew exactly what its powers were and were not for purposes of departures, and that it refused to depart because Horne's circumstances were fully addressed by the Guidelines and lay within the "heartland."

The court was correct. Horne attempts to present his status as a low-level dealer who distributed small quantities over a longer period as a novel idea, that is, a circumstance not taken into account by the Sentencing Commission. The contrary is true: Commentary to § 1B1.3 specifically addresses the issue of relevant conduct. "With respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved ..." The Guidelines mandate the sentencing court consider relevant conduct, without limitation on time period. Since Horne admitted that beginning around January 2000, he sold drugs daily, and that $500 was a bad day, while $1500 was a good day, the district court was required to consider this information as relevant conduct to his drug charge.

We are aware that the district court's reasoning in *United States v. Genao, supra,* is in some tension with this conclusion, but, apart from the fact that *Genao* is not binding on either us or the Second Circuit (which affirmed by unpublished or-

der), it is also not persuasive. In *Genao*, the district court found that since the defendants were low-level drug dealers that delivered small quantities of drugs over a substantial period of time, the aggregate quantity of drugs chargeable to them did not accurately reflect their culpability. The *Genao* court found that the Guidelines never considered this issue, but we disagree. Indeed, the Guidelines provide for a four-level departure for such a low-level drug dealer in some instances. *See* § 3B1.2. Although Horne's sentence is a long one, it is the one Congress has prescribed in the Guidelines, and it is not open to us to effectuate a wholesale restructuring of drug sentencing policy.

In summary, we agree that the evidence seized in connection with Horne's arrest was admissible, and that the district court neither misunderstood its authority nor misinterpreted the Guidelines when it sentenced Horne. We therefore **AFFIRM** the judgment of the district court.