In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3252

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

CHARLES ZOHFELD,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 CR 403—**Milton I. Shadur**, *Judge*.

ARGUED SEPTEMBER 18, 2009—DECIDED FEBRUARY 11, 2010

Before EASTERBROOK, *Chief Judge,* and WILLIAMS and TINDER, *Circuit Judges*.

WILLIAMS, *Circuit Judge.* Charles Zohfeld, after pleading guilty to stalking the surgeon who saved his life, was sentenced within the Sentencing Guidelines range. He complains that the district court relied on inaccurate information in sentencing him and improperly considered the mental health treatment he may have received in prison when arriving at his sentence. After

reviewing the record, we find that the district court did not rely on any inaccurate information in sentencing Zohfeld. We also find that the district court did not abuse its discretion in considering Zohfeld's mental health among the variety of factors it discussed at sentencing. Therefore, we affirm his sentence.

## I. BACKGROUND

Charles Zohfeld was rushed to the emergency room in May 2005 after suffering an apparent heart attack. Emergency room physicians stabilized Zohfeld and transferred him to the surgery unit. A cardiac surgeon performed open heart surgery and implanted a pacemaker, saving Zohfeld's life.

But after his successful recovery, Zohfeld began to harass and threaten the surgeon and his staff—making repeated threatening phone calls, appearing at the clinic without appointments, and monitoring the surgeon's family's whereabouts. On one phone call, he said, "I have been able to buy a Beretta 9-millimeter handgun and I will bring it by for [the surgeon] to see." On another call, he stated that he had been "practicing with my 9-millimeter handgun. . . . You really should consider taking out the stuff you put into me. I was the wrong person to stick a knife into. Got that?" Eventually, the surgeon felt the need to relocate his practice and family from Illinois to California. Much to the surgeon's dismay, after moving to California, Zohfeld again appeared at his medical office, and the threats continued.

Zohfeld was arrested and charged with two counts of making threatening phone calls in violation of 18 U.S.C. § 875(c). He pleaded guilty, and the government filed a memorandum requesting a sentence above the suggested Guidelines range based on the severe impact Zohfeld's crimes had, as well as Zohfeld's expressed desire to continue to harass the surgeon. The government also asked the district court not to apply the two-level reduction for acceptance of responsibility despite the fact that Zohfeld quickly pleaded guilty after his arrest.

Prior to sentencing Zohfeld, the district court granted his motion to be examined by a psychiatrist. Dr. Bernard Rubin, the examining physician, found him competent to stand trial. He also found that Zohfeld was delusional and would benefit from extensive therapy and psychiatric medication. Zohfeld voluntarily entered group therapy during his pre-sentencing detention. His therapist, Dr. Richard Bongard, advised the court that continuing therapy would be beneficial to Zohfeld.

At the sentencing hearing, over the government's objection, the court found that Zohfeld accepted responsibility for his actions and awarded him the corresponding two-level reduction. It then calculated the Guidelines range, which the parties agreed was 18 to 24 months' imprisonment. The government requested a sentence of 24 to 30 months' imprisonment, arguing that Zohfeld's conduct had a severe impact on the surgeon and others. Zohfeld's counsel asked the court to sentence Zohfeld to probation so he could receive outpatient psychiatric treatment.

Before reaching its decision, the district court discussed a variety of factors. Prominent in the court's mind was the severe impact Zohfeld's crime had on his victim and his victim's family. The court also stated that it felt that Zohfeld needed psychological treatment and medication in a custodial environment because he was not actively participating in the group therapy. The court acknowledged that it could not mandate that Zohfeld receive treatment, but Zohfeld said he needed it, so the district court instructed the Bureau of Prisons to place him at a facility that would give him the best mental health treatment possible. It then sentenced him to 24 months' imprisonment followed by 3 years of supervised release. Zohfeld appeals his sentence.

## II. ANALYSIS

We interpret Zohfeld's argument as having two parts: (1) the district court erred by relying solely on the fact that it believed that Zohfeld needed custodial mental health care in sentencing him to prison rather than probation; and (2) the district court relied on inaccurate information (its belief that he would receive adequate mental health care in prison) when it imposed his sentence. Neither of these arguments has merit.

The provision of mental health treatment was but one of a number of factors that the court properly considered before imposing a sentence. Contrary to Zohfeld's argument, it was not the "sole" reason he was sentenced to prison rather than probation; in fact, it was not even the primary reason. Zohfeld had committed a serious

offense that significantly impacted multiple people—the surgeon, his family and staff—and the district court concluded that a term of incarceration was warranted. In reaching this conclusion, the court listened to the arguments of both parties, heard testimony from Zohfeld and Zohfeld's daughter, and examined the factors listed in 18 U.S.C. § 3553(a). The court repeatedly emphasized the seriousness of Zohfeld's conduct, and even noted that in light of the offense it had given thought to imposing a sentence above the Guideline range. Its primary reason for rejecting Zohfeld's request to sentence him to probation—aside from the fact that probation was below the bottom of the Guidelines range of 18 months—was the seriousness of Zohfeld's actions.

In addition to considering the seriousness and impact of Zohfeld's crime, the court did address Zohfeld's mental health issues. It correctly recognized that without mental health treatment, Zohfeld might be more likely to continue his criminal behavior. It acknowledged that although Zohfeld had been attending group therapy sessions, counselors reported that he had not actively been participating in them. Therefore, the court stated that it was not confident that Zohfeld would receive the treatment he needed in a non-custodial environment. The court recognized, however, that while it could not force treatment on Zohfeld, it could recommend that the Bureau of Prisons place him at a facility where he could avail himself of such treatment.

We review a district court's sentences for reasonableness but its sentencing procedures under a non-

deferential standard. *United States v. Mendoza*, 510 F.3d 749, 754 (7th Cir. 2007). A within-Guidelines sentence is presumed reasonable. *United States v. Omole*, 523 F.3d 691, 696 (7th Cir. 2008) (citing *Rita v. United States*, 551 U.S. 338, 347 (2007)). The district court has wide latitude to consider many factors, including the need for mental health treatment, when imposing a sentence. Indeed, § 3553(a) specifically directs the court to consider a defendant's need for medical care. *See* 18 U.S.C. § 3553(a)(2)(D) (court shall consider need for sentence imposed to "provide the defendant with needed [. . .] medical care, or other correctional treatment in the most effective manner"); *see also United States v. Farris*, 448 F.3d 965, 969 (7th Cir. 2006) ("By recommending his participation in . . . mental health counseling, the court appreciated the need for a sentence that provided Farris with appropriate correctional treatment."). Here, the district court adequately took into account the § 3553(a) factors in determining a sentence for Zohfeld. Applying those factors, it concluded that a within-Guidelines sentence reflected the seriousness of the offense, promoted respect for the law, and provided just punishment. That an additional factor considered was Zohfeld's need for mental health treatment was not an abuse of discretion.

Zohfeld's point that a district court may not rely on inaccurate information when imposing a sentence is legally correct, but of no relevance here. *See, e.g., United States v. Jones*, 454 F.3d 642, 652 (7th Cir. 2006); *United States ex rel. Welch v. Lane*, 738 F.2d 863, 868 (7th Cir. 1984). Zohfeld does not dispute that he has mental

health issues or that he needs treatment. Instead, he argues that the "inaccurate" information was the court's belief that he would receive adequate treatment in prison. The Bureau of Prison's manual states that prisoners are entitled to free mental health counseling, and, if appropriately diagnosed by a psychiatrist, prescription drugs to treat their mental health problems. *See* BOP: Inmate Mental Health Treatment and Counseling, http://www.bop.gov/inmate_programs/mental.jsp (last visited January 12, 2010); *United States v. Hankton*, 432 F.3d 779, 789 (7th Cir. 2005) ("[T]he law is very clear that a sentencing judge 'may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.' . . . A corollary to this general principle is the rule that a sentencing judge 'may consider relevant information without regard to the rules of evidence . . . provided that the information has [a] sufficient indicia of reliability to support its probable accuracy.'" (citations omitted)). The district court is entitled to rely on this information when concluding that the Bureau of Prisons would give Zohfeld adequate mental health treatment. It did not rely on inaccurate information when imposing Zohfeld's sentence.

### III.  CONCLUSION

For the foregoing reasons, Zohfeld's sentence is AFFIRMED.