NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 7, 2010
Decided July 12, 2010

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 09-2602

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 09 CR 364-1 |
| FANNY WASHINGTON, *Defendant-Appellant.* | David H. Coar, *Judge*. |

**O R D E R**

Fanny Washington was 64 when a jury found her guilty on 17 counts of wire fraud, 18 U.S.C. § 1343, and 7 counts of presenting false claims to the Internal Revenue Service, *id.* § 287. The district court sentenced her to a total of 41 months' imprisonment and ordered restitution. Washington had sought home confinement. On appeal she argues that the district court's explanation for her prison sentence is inadequate to demonstrate that the court gave adequate consideration to her "advanced age" and medical history, which Washington characterizes as her "principal arguments" at sentencing. But she overstates the case she made to the district court, and we affirm.

**I.**

Washington worked for a tax-preparation service based in the lobby of a Chicago currency exchange. She met with clients, prepared their tax returns, and helped seniors and persons with disabilities complete applications for state financial assistance. Washington stole the identities of 11 clients, filed false federal income tax returns in their names for tax years 2000 through 2003, and cashed $49,223 in refund checks. She likewise filed false returns for herself and her husband for tax years 2000 through 2004, claiming another $29,975 in refunds.

Washington also defrauded the Social Security Administration. She was the "representative payee"—a third party who receives benefits on behalf of a recipient, usually due to incapacity, *see* 42 U.S.C. § 405(j)—for an elderly man with schizophrenia. After he died in 1988, Washington deposited his benefit checks directly into her bank account for 14 years until she was confronted by an agent from the Social Security Administration. She converted a total of $83,639 in benefits.

In the presentence investigation report, the probation officer reported that Washington expressed displeasure with her trial and its outcome. She complained that many persons commit these same crimes but are not caught or prosecuted, and she stated that she did not profit from her criminal activity as much as others. The probation officer also documented Washington's medical record: heart attacks in 1990 and 1997; a history of lupus, hypertension, angina, heart disease, high cholesterol, cataracts, and glaucoma; and Stickler syndrome (an inherited disorder that causes eye problems, altered facial features, hearing difficulty, and joint pain, *see* Mayo Clinic, Stickler Syndrome, http://www.mayoclinic.com/health/stickler-syndrome/DS00831 (last visited July 7, 2010)). The probation officer assumed that Washington's health was a mitigating factor but concluded that it was the only such factor and did not outweigh the scope of her criminal conduct, her refusal to admit responsibility, and the prolonged duration of her fraud against the Social Security Administration.

The day before Washington's sentencing hearing, her lawyer filed a 4-page memorandum seeking a sentence of 3 years' probation with a year of that in home confinement. According to counsel, this alternative to prison was necessary due to Washington's "substantial medical needs, lack of criminal history, and family obligations." Washington's memo recites—without elaboration and almost verbatim—the probation officer's description of her medical problems. Her age is not identified as a mitigating factor.

At the sentencing hearing, the district court calculated a guidelines imprisonment range of 33 to 41 months, which is not disputed. The court then invited allocution from defense counsel, who started to discuss Washington's sentencing memorandum. The judge interrupted and said he was unaware of the memo. A copy was tendered, the court asked for a moment, and then there was a brief pause. When counsel resumed, he alluded to the memo and proceeded to "highlight" Washington's medical history. Counsel asserted that Washington's "significant and serious medical history and her physical condition" was "the central issue" but did not elaborate. Age was not mentioned as a mitigating factor. The prosecutor replied that Washington's health was stable despite previous heart and eye surgery. The prosecutor added—without contradiction from Washington—that her ailments could be effectively treated at a Bureau of Prisons medical facility.

The district court concluded that a prison sentence at the high end of the range was essential "for deterrence, specific deterrence" since Washington had not accepted responsibility and claimed ignorance about why she was prosecuted. After the court announced the sentence, Washington's counsel asked that her surrender date be delayed so that she could continue seeing her cardiologist. The district court declined but permitted Washington to renew her motion if she could produce medical documentation substantiating the need for delay. Washington never did.

## II.

Washington does not dispute the calculation of the guidelines imprisonment range. She essentially makes one argument on appeal: that the district court's explanation for imposing a 41-month sentence fails to demonstrate that the court considered the pertinent factors under 18 U.S.C. § 3553(a). According to appellate counsel, the district court did not at any point "explicitly recognize that it had specifically considered any of the factors under § 3553" and was silent "regarding Washington's medical history and advanced age." We review the substance of a sentence only for reasonableness, but examine the manner in which it was imposed under a nondeferential standard. *United States v. Zohfeld*, 595 F.3d 740, 743 (7th Cir. 2010); *United States v. Villegas-Miranda*, 579 F.3d 798, 801 (7th Cir. 2009).

A sentencing court need not mention each of the § 3553(a) factors, especially when the sentence is within the guidelines range. *United States v. Coopman*, 602 F.3d 814, 819 (7th Cir. 2010); *United States v. Moreno-Padilla*, 602 F.3d 802, 811 (7th Cir. 2010). Rather, the court must give the reasons for its choice of sentence and address the defendant's principal arguments, but need not address weak or stock arguments. *United States v. Christiansen*, 594 F.3d 571, 577 (7th Cir. 2010); *Villegas-Miranda*, 579 F.3d at 801; *United States v. White*, 582 F.3d

787, 798 (7th Cir. 2009), *cert. denied,* 130 S. Ct. 1542 (2010); *United States v. Tahzib*, 513 F.3d 692, 695 (7th Cir. 2008); *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005).

Washington contends that her age and medical history were significant mitigating factors, and that the district court's failure to explicitly mention either suggests that the court did not consider the § 3553(a) factors. The Sentencing Commission has concluded that medical issues, unless they arise to the level of an "extraordinary physical impairment," generally do not provide a reason for imposing a below-range sentence. U.S.S.G. § 5H1.4; *United States v. Poetz*, 582 F.3d 835, 837-38 (7th Cir. 2009). Likewise, the Commission has taken the position that age is relevant only if the defendant is elderly and infirm. U.S.S.G. § 5H1.1; *United States v. Powell*, 576 F.3d 482, 499 (7th Cir. 2009). Of course, the Commission's views are not binding after *United States v. Booker*, 543 U.S. 220 (2005), but sentencing courts may still look to the Commission for guidance in applying the § 3553(a) factors. *Powell*, 576 F.3d at 499; *United States v. Filipiak*, 466 F.3d 582, 584 (7th Cir. 2006); *United States v. Castro-Juarez*, 425 F.3d 430, 434 (7th Cir. 2005).

First, there was no reason for the district court to mention Washington's age because it was never an issue. Washington's sentencing memorandum includes only one reference to her age: a single sentence that she has "resided most of her 64 years in the Chicago-land area." And not once at the sentencing hearing did her lawyer assert that Washington's age was a mitigating factor. At all events, at no point did Washington (nor does she now) suggest that she is elderly or infirm, *see* U.S.S.G. § 5H1.1; *Powell*, 576 F.3d at 499, or that her age contributed to her crimes or lessens the need for punishment, *see United States v. Omole*, 523 F.3d 691, 699 (7th Cir. 2008) (vacating below-range sentence where district court cited defendant's youth, a characteristic not unique to the defendant, as a basis for a significant decrease). The argument that advanced age is always a mitigating factor is a "nonstarter." *United States v. Wurzinger*, 467 F.3d 649, 652 (7th Cir. 2006); *United States v. Bullion*, 466 F.3d 574, 576 (7th Cir. 2006).

As for her health, Washington at least asserted that her medical history was a reason to impose a below-range sentence, but that contention was never developed in the district court and thus was so weak that no response by the court was necessary. In her sentencing memorandum and in open court Washington catalogued her medical issues and stated that she is in poor health, but never did she try to explain why her poor health warrants leniency in punishment. *See United States v. Jackson*, 547 F.3d 786, 795-96 (7th Cir. 2008) (concluding that sentencing court was not required to discuss defendant's contention that he deserved lower sentence because of low IQ where defendant failed to supply documentation of mental functioning or explain how low IQ contributed to commission of the crime), *cert. denied,* 129 S. Ct. 1538 (2009); *United States v. Beier*, 490 F.3d 572, 574 (7th Cir. 2007)

(upholding district court's refusal to impose lower sentence when defendant who was molested and had low IQ failed to explain why these personal characteristics warranted leniency).  Washington did not argue that she was experiencing complications at the time of sentencing.  *See United States v. Harris,* 567 F.3d 846, 854-55 (7th Cir.) (remanding for resentencing where district court imposed 504-month sentence without mentioning defendant's argument that complications from diabetes, including amputated leg, warranted lower sentence), *cert. denied,* 130 S. Ct. 1032 (2009).  She experienced all of her medical ailments while executing her fraudulent schemes, but she made no effort to explain why conditions that did not hinder her crimes should then warrant less punishment.  *Cf. United States v. Dyer*, 216 F.3d 568, 570-71 (7th Cir. 2000) ("If Dyer's mental condition was not a but-for cause of his crime, that is, if he would have committed the crime even if he had been completely sane at all times, then it is hard to see how his mental condition is any more relevant to his punishment than the color of his hair.  .  .  .  If there is no connection between the defendant's mental condition and his crime, there is no basis for a punishment discount.").  Further, Washington never contended that her maladies are themselves imprisoning, i.e., that she is bedridden or that her conditions require a level of care that the BOP cannot provide.  Indeed, Washington was silent when the prosecutor asserted that the BOP was equipped to deal with her medical issues.  *Cf. United States v. Dowell*, 388 F.3d 254, 256 (7th Cir. 2004) (upholding refusal to depart downward based on defendant's heart condition where district court concluded that BOP's medical care was sufficient); *United States v. Krilich*, 257 F.3d 689, 693-94 (7th Cir. 2001) (overturning downward departure based on defendant's poor health where defendant did not show that his heart condition was so disabling as to require constant care or render him bedridden); *United States v. Albarran*, 233 F.3d 972, 978-79 (7th Cir. 2000) (upholding refusal to downwardly depart on basis of defendant's heart condition where defendant did not present any evidence that he needed constant care).  Thus, the district court's silence about Washington's medical history was of no consequence because Washington never established that her health was a significant mitigating factor.  *See United States v. Nurek*, 578 F.3d 618, 626 (7th Cir. 2009) (explaining that district court was not obligated to specifically discuss defendant's physical ailments where those ailments were not shown to be significant mitigating factors), *cert. denied,* 78 U.S.L.W. 3610 (U.S. Apr. 19, 2010) (No. 09-8147); *United States v. Simmons*, 582 F.3d 730, 734-35, 738 (7th Cir. 2009) (same).

Because the district court was not required to mention Washington's age or medical history, she is left to argue that the court failed to adequately weigh the § 3553(a) factors.  We presume that Washington's sentence is substantively reasonable because it falls within the properly calculated guidelines range.  *See Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005).  Nothing in the record overcomes this presumption.

AFFIRMED.