**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

MATTHEW EUGENE DUPAS,
            *Defendant-Appellant.*

No. 04-50055

D.C. No.
CR-02-00339-
DOC-2

OPINION

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued March 11, 2005; Resubmitted July 27, 2005
Pasadena, California

Filed August 3, 2005

Before: John R. Gibson,* Susan P. Graber, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Graber

---

*The Honorable John R. Gibson, Senior United States Circuit Judge for
the Eighth Circuit, sitting by designation.

---

**COUNSEL**

Jonathan D. Libby, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Richard Y. Lee, Assistant United States Attorney, Santa Ana, California, for the plaintiff-appellee.

---

**OPINION**

GRABER, Circuit Judge:

Defendant Matthew Eugene Dupas appeals the sentence imposed after his conviction for possessing stolen mail in violation of 18 U.S.C. § 1708.[1] The government concedes that Defendant's sentence of imprisonment may be remanded to the district court pursuant to our decision in *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc), because that sentence rested on the district court's finding of fact as to the amount of loss and was imposed according to the then-mandatory United States Sentencing Guidelines. Here, we address two other challenges to Defendant's sentence, both of which present issues of first impression in this circuit. Both issues are raised for the first time on appeal, so we review only for plain error. *See id.* at 1078 (reviewing the defendant's

---

[1]Defendant's guilty plea was conditioned on his appeal of the district court's denial of his motion to suppress. We affirmed the district court's denial of the motion and affirmed Defendant's conviction in a memorandum disposition. *United States v. Dupas*, No. 04-50055, 126 Fed. Appx. 845 (9th Cir. Mar. 28, 2005). We then withdrew submission of Defendant's challenge to his sentence pending our en banc decision in *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc).

Sixth Amendment challenge for plain error); *United States v. Rearden*, 349 F.3d 608, 618 (9th Cir. 2003) (reviewing a challenge to conditions of supervised release for plain error), *cert. denied*, 125 S. Ct. 32 (2004).

First, Defendant argues that the retroactivity principles of the Fifth Amendment's Due Process Clause preclude the retroactive application of the *remedial* holding of *United States v. Booker*, 125 S. Ct. 738, 756-57 (2005), which excised portions of Title 18 of the United States Code in order to make the Sentencing Guidelines effectively advisory. As we explain below, we reject Defendant's argument and hold that he may be resentenced according to the principles set forth in *Booker* and *Ameline*.

Second, Defendant challenges two conditions of supervised release pertaining to searches and to payments for substance abuse treatment. We affirm the former and, although we are uncertain whether the latter was an improper delegation of the district court's authority under 18 U.S.C. § 3672, our very uncertainty persuades us that the district did not plainly err.

## A. *Factual and Procedural Background*

Defendant and a co-defendant were stopped by a police officer for traffic violations. After the officer learned that an arrest warrant was outstanding for the co-defendant, he arrested the co-defendant and searched the passenger compartment of the car. He found mail, checks, and credit cards belonging to other people and, consequently, arrested Defendant as well. A search of the entire car revealed many similar items.

After the district court denied Defendant's motion to suppress, he entered a conditional guilty plea to one count of possession of stolen mail. In the plea agreement, Defendant and the government stipulated to an amount of loss not exceeding $5,000. Before accepting Defendant's plea, the district court

warned him that the court was bound to apply the Sentencing Guidelines ("U.S.S.G.") and, therefore, could not guarantee that Defendant would receive the sentence agreed to in the plea agreement.[2]

At sentencing, the district court declined to accept the parties' stipulated calculation of loss and instead found, over the objections of both parties, that the intended loss was $49,306.95. The court based its calculation on information in the presentence report ("PSR") that Defendant had possessed 67 "unauthorized access devices" (under U.S.S.G. § 2B1.1, cmt. n.2(F)(I) (2002), the minimum loss per access device is $500, for a total of $33,500); and that Defendant possessed stolen checkbooks from which they had written checks amounting to $15,806.95. Because of those findings, Defendant received an upward adjustment of 6 offense levels under U.S.S.G. § 2B1.1(b)(1)(D), resulting in a total offense level of 13 and a sentencing range of 24 to 30 months. The court sentenced Defendant at the bottom of that range.

The court also imposed several conditions of supervised release, two of which Defendant challenges on appeal. The conditions are reproduced below, in our discussion of Defendant's arguments.

B.   *Ex post facto principles do not prohibit resentencing under* Booker *and* Ameline.

Some background is helpful to understanding Defendant's argument. After the Supreme Court invalidated Washington State's sentencing scheme in *Blakely v. Washington*, 542 U.S. 296 (2004), many courts and commentators correctly predicted that the Supreme Court also would hold that the federal

---

[2]The court noted, "the Guidelines become sentencing, in a sense." Because of this comment and because the court sentenced Defendant to the bottom of the applicable sentencing range, we agree with the parties that resentencing is appropriate under *Ameline*.

system of sentencing guidelines violated the Sixth Amendment (as it ultimately did in *Booker*). Commentators discussed a variety of remedies, including sentencing trials at which a jury would be required to find, beyond a reasonable doubt, the facts that determine the sentencing range. *See, e.g.*, Nancy J. King & Susan R. Klein, *Beyond Blakely*, 16 Fed. Sent. Rep. 316, 322-23 (2004) (discussing sentencing findings by juries). The Supreme Court did not select that remedy, preferring instead to excise the elements of the Sentencing Reform Act that had made the guidelines mandatory. *See Booker*, 125 S. Ct. at 756-57.

Defendant is not satisfied with the remedy selected by the Supreme Court. The "advisory guidelines" remedy gives the sentencing judge discretion to sentence outside the guideline range, but still allows the sentencing judge (as distinct from a jury) to make the findings of fact necessary to determine the guideline range in the first place. In Defendant's case, where the parties agreed to a loss of no more than $5,000 but the district court instead found a loss of $49,306.95, Defendant would prefer a remedy that eliminates the court's power to make findings of fact at all. Under *Ameline*, the district court could make the same finding of fact at resentencing and, if it does, Defendant will have to rely on the court's discretion to receive a sentence lower than the range set by the guidelines. By contrast, under a system in which the guidelines were mandatory but a *jury* was required to decide the facts necessary to determine the sentencing range, Defendant would be assured of a sentencing range corresponding to a loss of $5,000 or less, because the government agreed not to argue that the amount of loss exceeded $5,000. In pursuit of that result, Defendant fashions a novel due process argument based on ex post facto principles. His argument proceeds in two steps.

First, Defendant points out that *Booker* contains two separate holdings. One is the Sixth Amendment rule set forth in Justice Stevens' opinion: Within a system of mandatory sen-

tencing guidelines, any fact (other than a prior conviction) that is necessary to support a sentence exceeding the maximum authorized by the facts established in a guilty plea or jury verdict must be admitted by the defendant or proved to the jury beyond a reasonable doubt. *See Booker*, 125 S. Ct. at 756. The other is Justice Breyer's remedial holding, which modified the Sentencing Reform Act of 1984 to make the Guidelines advisory by excising the provisions of Title 18 that previously had made the Guidelines mandatory. *Id.* at 756-57.

In the second step of his argument, Defendant "essentially asks this court to apply Justice Stevens' opinion in *Booker* retroactively, but refuse to apply Justice Breyer's opinion in *Booker* retroactively." *United States v. Duncan*, 400 F.3d 1297, 1304 (11th Cir. 2005). He argues that we must apply different retroactivity analyses to *Booker*'s two holdings. Specifically, he argues that, under *Griffith v. Kentucky*, 479 U.S. 314, 327-28 (1987), defendants in pending cases must be afforded the benefit of a constitutional rule such as Justice Stevens' Sixth Amendment holding. But retroactive application of new judicial interpretations of criminal statutes, Defendant argues, is barred by the ex post facto principles that informed the Supreme Court's due process decision in *Bouie v. City of Columbia*, 378 U.S. 347, 353-55 (1964).[3] In short, Defendant seeks the benefit of Justice Stevens's opinion—which, standing alone, would require the facts supporting his sentence to be admitted or proved beyond a reasonable doubt—without the burden of Justice Breyer's opinion—which instead resolves the Sixth Amendment problem by making the Guidelines advisory. Again, in Defendant's particular circumstance, that would ensure a lower sentence than that originally imposed because Defendant and

---

[3]The Ex Post Facto Clause of the Fifth Amendment, by its terms, applies only to changes in the law resulting from legislative or executive action, but the Court has extended similar principles to the Due Process Clause to cover "unforeseeable [judicial] construction of a criminal statute." *Bouie*, 378 U.S. at 354-55.

the government stipulated to an amount of loss not exceeding $5,000 and the guideline range would be correspondingly lower.

[1] Defendant's argument suffers from three fatal flaws. First, as the Eleventh Circuit pointed out in responding to a very similar argument, "in *Booker*, the Supreme Court expressly stated that *both* holdings should be applied to cases on direct review." *Duncan*, 400 F.3d at 1304. And our decision in *Ameline*, under which Sixth Amendment violations can be cured by giving district courts the opportunity to resentence defendants under the now-advisory Guidelines, necessarily implies that appellate courts should apply *both Booker* holdings retroactively.

[2] Second, "[i]n *United States v. Newman*, 203 F.3d 700, 703 (9th Cir. 2000), we held that *Bouie* applied only to after-the-fact increases in the scope of criminal liability *and not to retroactive sentence enhancements*." *Holgerson v. Knowles*, 309 F.3d 1200, 1202 (9th Cir. 2002) (emphasis added);[4] *see also Webster v. Woodford*, 369 F.3d 1062, 1069 (9th Cir. 2004) (noting that "*Bouie* does not apply to sentencing schemes" and citing *Newman*). *Newman* clearly held that Ninth Circuit precedent limited *Bouie* to new interpretations of *substantive* criminal statutes. 203 F.3d at 702. Contrary to Defendant's argument, *Newman*'s holding regarding *Bouie*—which is the focus of the opinion—is not dictum merely because we gave a one-sentence alternative holding at the end of the opinion. *See id.* at 703 (concluding that, even if *Bouie* applied, no due process violation had occurred because the judicial decision at issue was reasonably foreseeable); *see also Barapind v. Enomoto*, 400 F.3d 744, 750-51 (9th Cir. 2005) (en banc) (per curiam) (explaining that an issue pre-

---

[4]*Holgerson* involved a habeas petition by a defendant in state custody, so we relied on *Newman* only for the proposition that it was not clearly established that *Bouie* applies to sentencing enhancements. *Holgerson*, 309 F.3d at 1203.

sented to, and decided by, the court can be controlling even if it was not "in some technical sense 'necessary' to our disposition of the case").

**[3]** Finally, even if we could distinguish *Newman*, the holding in *Bouie* would not entitle Defendant to protection from every change in sentencing law that might disadvantage him. In *Rogers v. Tennessee*, 532 U.S. 451, 458 (2001), the Supreme Court explained that, despite its expansive phrasing, *Bouie* did not "incorporate[ ] the specific prohibitions of the *Ex Post Facto* Clause" into the Due Process Clause:

> [*Bouie*'s] rationale rested on core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct.

*Id.* at 459 (citation omitted). Fair warning, then, is the touchstone of the retroactivity analysis under the Due Process Clause. *See id.* at 462.

**[4]** The Eleventh Circuit relied on *Rogers*' clarification of *Bouie* to reject an argument similar to the one that Defendant makes here. *Duncan*, 400 F.3d at 1306-08. The defendant in *Duncan* had argued that "Justice Breyer's remedial interpretation, if applied retroactively, would increase the sentence authorized by the jury's verdict" to the maximum permitted by the statute of conviction. *Id.* at 1307. The court held that, because the relevant maximum at the time the defendant committed his offense was the statutory maximum enacted in the United States Code, which set a maximum of life imprisonment, the defendant had sufficient warning of the potential consequences of his actions to satisfy the due process concerns articulated in *Rogers*. *Id.*; *see also United States v. Gray*, 362 F. Supp. 2d 714, 725-26 (S.D.W.Va. 2005) (rejecting the argument that due process prohibits retroactive application of the *Booker* remedial opinion because the defendants

had fair warning of the statutory maximum). Like the defendant in *Duncan*, Defendant had fair notice, when he committed his crime and entered his plea, that his sentence could be based on a judicial determination of the amount of intended loss and set within the applicable statutory maximum.

[5] For those three reasons, we reject Defendant's argument and grant him a limited remand according to the procedures set forth in *Ameline*, 409 F.3d at 1084-85.[5]

C. *The district court did not plainly err by imposing conditions of supervised release.*

1. *The search condition*

[6] Defendant argues that the following condition, which provides for searches "with or without" cause, facially violates his Fourth Amendment rights:

The defendant shall submit person and property to

---

[5]Defendant raises two arguments about the procedure that the district court must follow in the event that the court agrees to resentence him. One of those arguments—that sentencing facts must be proved to the court beyond a reasonable doubt—is foreclosed by *Ameline*. In *Ameline*, we explained that the district court must continue to apply the burdens of proof set forth in *United States v. Howard*, 894 F.2d 1085, 1089-90 (9th Cir. 1990). 409 F.3d at 1085-86.

The other argument, regarding the effect of the plea agreement on the government's opportunity to present evidence to the district court at resentencing, should be addressed to the district court in the event that resentencing occurs. Nonetheless, we will make two observations. First, *Ameline* precludes the court from relying solely on the factual statements in the PSR during resentencing only if the defendant "contests the factual basis of a PSR." *Id.* It is not clear to us that Defendant has raised a *factual* objection to the PSR, as distinct from an argument concerning the inferences that the court may draw from the *undisputed* facts contained therein. Second, Defendant's plea agreement reserved to both parties the opportunity to "supplement the facts stipulated to in this agreement by supplying relevant information to . . . the Court."

search or seizure at any time of the day or night by any law enforcement officer with or without a warrant and with or without reasonable or probable cause[.]

The constitutionality of this condition is controlled by *United States v. Guagliardo*, 278 F.3d 868, 873 (9th Cir. 2002) (per curiam). There, we upheld an apparently identical condition of supervised release that required the defendant to submit to searches by any probation or law enforcement officer "with or without reasonable or probable cause." *Id.*; *see also id.* (Fernandez, J., concurring and dissenting). We are bound by that holding.[6]

**[7]** Defendant also argues that we must remand for the district court to provide a statement of reasons why the condition was imposed. Under *Rearden*, an explicit statement of reasons is not absolutely required by 18 U.S.C. § 3583(d). *See* 349 F.3d at 619 (reviewing conditions of supervised release despite the absence of a statement of reasons for each condition, where the reasons for the conditions were clear from the PSR). Moreover, Defendant has not argued that the district court lacked sufficient reasons for imposing the condition. Defendant's challenge rests only on the Fourth Amendment, and he does not explain how the absence of a statement of reasons furthers his constitutional challenge or distinguishes this case from *Guagliardo*.

2. *The treatment condition*

The court ordered Defendant to participate in substance abuse treatment and imposed the following condition regarding payment for that treatment:

---

[6]There may be circumstances in which a search conducted pursuant to this condition would raise Fourth Amendment concerns, but we need not confront such circumstances here. We are asked to determine *only* the facial validity of the condition, which was upheld in *Guagliardo*, 278 F.3d at 873.

> As directed by the Probation Officer, the defendant shall pay all or part of the costs of treating the defendant's drug or alcohol dependancy to the aftercare contractor during the period of community supervision, pursuant to 18 USC 3672.

> The defendant shall provide payment and proof of payment as directed by the Probation Officer[.]

Defendant argues that allowing the probation officer to determine Defendant's share of the treatment costs improperly delegates to the probation officer the court's exclusive authority under 18 U.S.C. § 3672. He urges us to interpret § 3672 strictly, as the courts of appeals have interpreted statutes that give the court exclusive authority to order payment of restitution and fines. *See, e.g.*, *United States v. Gunning*, 339 F.3d 948, 949-50 (9th Cir. 2003) (per curiam) (following other circuits and holding that the court's responsibility under the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. §§ 3663A-3664, to specify the "manner in which . . . restitution is to be paid" is nondelegable); *United States v. Merric*, 166 F.3d 406, 408-09 (1st Cir. 1999) (joining other circuits and holding that only the court may set a schedule for payment of fines pursuant to 18 U.S.C. § 3572(d)).

   **[8]** Section 3672 sets forth the "Duties of [the] Director of [the] Administrative Office of the United States Courts" with respect to the probation system and its officers. Among other things, it gives the director "the authority to contract with any appropriate public or private agency or person for the detection of and care in the community of an offender" with substance abuse or psychiatric issues. After setting forth the various duties and powers of the director, the statute's final paragraph turns to the authority of the *court* to order payment for substance abuse and psychiatric treatment:

> Whenever *the court finds that funds are available for payment by* or on behalf of *a person furnished*

> *such services*, training, or guidance, *the court may direct that such funds be paid* to the Director. Any moneys collected under this paragraph shall be used to reimburse the appropriations obligated and disbursed in payment for such services, training, or guidance.

18 U.S.C. § 3672 (emphasis added).[7]

There are good arguments on both sides of the question that Defendant raises. On the one hand, § 3672 refers expressly to *the court's* authority. In this sense, it parallels the text of the restitution and fine statutes that we mentioned above. *See id.* § 3572(d) ("If the court provides for payment in installments, the installments shall be in equal monthly payments over the period provided by the court, unless the court establishes another schedule."); *id.* § 3664(f)(1)(B) ("Upon determination of the amount of restitution owed to each victim, the court shall . . . specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid . . . ."). As we have said, those statutes have been interpreted literally to require that the court alone exercise the specified authority. *See, e.g.*, *Gunning*, 339 F.3d at 949 ("The language of the MVRA is categorical."); *United States v. Kassar*, 47 F.3d 562, 568 (2d Cir. 1995) ("The statutory language of §§ 3572(d) and 3663(f)(1) identically impose upon the 'court' the responsibility for determining installment payments[.]"),[8] *abrogated on other grounds as stated in United*

_____

[7]This paragraph was added to § 3672 in 1987, Pub. L. No. 100-182, § 20(2), 101 Stat. 1266 (1987), a year after the provision relating to the director's authority to contract with treatment providers. We have located no legislative history pertaining to the 1987 addition.

[8]We have never held that delegation is improper under § 3572(d). In fact, in *Montano-Figueroa v. Crabtree*, 162 F.3d 548, 549-50 (9th Cir. 1998) (per curiam), we questioned *Kassar*'s interpretation of § 3572(d) and concluded that the statute did not bar a Bureau of Prisons program that diverted a prisoner's wages to pay a fine set by the district court. *Montano-Figueroa*, however, did not involve an express delegation by the district court. *Id.* at 450.

*States v. Mercurris*, 192 F.3d 290, 294 (2d Cir. 1999). Some courts have rested such literal interpretations on the principle that the imposition of punishment is a core judicial function. *See United States v. Miller*, 77 F.3d 71, 77-78 (4th Cir. 1 996) (reasoning that the statutory duty to fix the terms of fines and restitution "must be read as exclusive because the imposition of a sentence, including the terms of probation or supervised release, is a core judicial function"); *Merric*, 166 F.3d at 409 (recognizing some ambiguity in § 3572(d), but "join[ing] the other circuit courts that have held that it is the inherent responsibility of the judge to determine matters of punishment and this includes final authority over all payment matters"). Defendant's argument that we must interpret § 3672's reference to "the court" strictly finds support in those cases.

[9] On the other hand, the only other circuit to address this precise question concluded that delegation to a probation officer was permissible under § 3672, despite controlling precedent holding that the court's authority under a restitution statute is exclusive and nondelegable. *United States v. Warden*, 291 F.3d 363, 365-66 (5th Cir. 2002) (distinguishing *United States v. Albro*, 32 F.3d 173 (5th Cir. 1994) (per curiam)). In *Warden*, the condition read: "The defendant will incur costs associated with such [treatment], based on ability to pay as determined by the probation officer." *Id.* at 364. The court distinguished that directive from the one in *Albro*. In *Albro*, the district court had set a total restitution amount and directed the probation office to determine a payment schedule. *Albro*, 32 F.3d at 174. The *Warden* panel held that its case was different because the probation officer's only responsibility was to determine the offender's ability to pay. 261 F.3d at 366.

There are strong arguments in favor of *Warden*'s position, not the least of which is our preference for avoiding circuit splits. Additionally, the context of the provision in § 3672 is quite different from the context found in §§ 3572 and 3664. The latter provisions relate generally to the court's imposition

of sentences and restitution. Section 3672, by contrast, is directed primarily to the functions of the probation office. Moreover, the need to interpret the statute strictly so as to reserve core judicial functions to the court is weaker here; the condition at issue does not delegate to the probation officer the power to order substance abuse treatment in the first place. *Cf. United States v. York*, 357 F.3d 14, 22 (1st Cir. 2004) (reasoning that setting a schedule for polygraph testing is a "matter of administrative detail," not a core judicial function). Finally, § 3672 requires the court only to find generally that funds are available to pay for an offender's treatment and, if so, allows the court to direct that such funds be paid. By contrast, § 3572(d) and § 3664(f) expressly require the court to establish or specify the precise payment schedule. *Cf. SEC v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003) (stating that, when Congress uses different words in connection with the same subject, we presume that Congress intended a different meaning).

**[10]** Fortunately, our only task here is to determine whether the district court plainly erred. "Before [we] can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Jordan*, 256 F.3d 922, 926 (9th Cir. 2001) (internal quotation marks omitted). Only when all three conditions are met may we reverse, and then only if the error "seriously affects the fairness, integrity, or public reputation" of the proceeding. *Id.* We conclude that, even if the district court erred, the second condition is not met in this case. That is, the error, if any, is not "plain." For an error to be plain, it must be "clear" or "obvious" under current law. *United States v. Paul*, 37 F.3d 496, 500 (9th Cir. 1994) (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)). As our discussion above suggests, we are not persuaded that any error would have been "clear" under current law. *See Warden*, 291 F.3d at 365-66 (allowing delegation). Accordingly, imposition of the treatment condition was not plain error.

In summary, the district court did not plainly err by imposing the two conditions of supervised release that Defendant challenges on appeal. But under our holding in *Ameline*, a limited remand of Defendant's prison sentence is appropriate. That remedy is not barred by the ex post facto principles articulated by the Supreme Court in *Bouie* and *Rogers*.

Conditions of supervised release AFFIRMED; sentence of imprisonment REMANDED.