[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**November 9, 2005**
**THOMAS  K. KAHN**
**CLERK**

No. 05-10977
Non-Argument Calendar

_____

D. C. Docket No. 04-00427-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARCI  R. WISE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(November 9, 2005)**

Before HULL, WILSON  and HILL, Circuit Judges.

PER CURIAM:

Marci R. Wise appeals her 24-month sentences, imposed after she pled

guilty to 15 counts of bank fraud, in violation of 18 U.S.C. § 1344.  On appeal,

Wise argues that the district court: (1) violated her ex post facto and due process rights by sentencing her under an advisory, as opposed to mandatory guidelines regime; (2) incorrectly applied a "vulnerable victim" enhancement; and (3) imposed an unreasonable sentence. For the reasons stated more fully below, we affirm.

After the Supreme Court's decision in Blakely v. Washington, 542 U.S. 296 (2004), but before the Supreme Court's decision in United States v. Booker, 543 U.S. ___, 125 S.Ct. 738 (2005), Wise pled guilty to all 15 counts of bank fraud charged in her indictment. At her plea colloquy, Wise was informed that the maximum possible sentence on each count was 30 years' imprisonment, and that the court would be considering the Sentencing Guidelines after reviewing a presentence investigation report (PSI).

According to the undisputed facts in the PSI, an investigation into Wise started in February 2003, when Ken Sternberg contacted the Northlake Branch of Wachovia Bank in Atlanta, Georgia, regarding interest income information for his father's certificates of deposit (CD) for the tax year of 2002. His father, Samuel Sternberg, is 95 years' old, feeble, and legally blind, and his son handles his financial affairs. Although Sternberg was supposed to have five CDs, bank records showed only four CDs, with one having been cashed out in November 2002 and

disbursed in two official checks to Visa and Discover accounts, belonging to former branch manager Marci Wise. It was discovered that, between August 27, 1999, and December 5, 2002, Wise had withdrawn $65,033.97 from Sternberg's CDs, using withdrawal forms and pay-out tickets prepared by Wise and indicating that the "customer could not sign" and using a forged signature. With interest, the total loss to Sternberg and, therefore, to Wachovia Bank, was $70,983.27.

In addition, the investigation revealed that Wise was receiving bank statements for Sylvia Raiford, who has Parkinson's disease and, because of difficulty handling her financial affairs, has her daughter assist her with her finances. Between May 2, 2001, and December 5, 2002, Wise obtained $127,244.58 from Raiford's accounts. According to Raiford, Wise helped her with her banking and brought her withdrawals in $50-$100 amounts, as Raiford was in an assisted living home across the street from the bank, and also helped Raiford pay her bills by setting up an automatic withdrawal plan. Raiford, after the sale of her home in 2001, had $200,000 in her account and told Wise that she wanted to invest it, to which Wise replied that it was not enough money to invest. At some point, Wise suggested that Raiford have her bank statements sent directly to Wise, so that Wise could ensure that Raiford's bills were being paid in a timely fashion, and Raiford agreed, but never authorized Wise to make withdrawals on her

3

account. Further investigation revealed that Wise had deposited two of Raiford's disability checks, totaling $819.91, into her own account. The total amount of loss in the case was calculated to be $199,867.67.

In an interview, Wise admitted that she had withdrawn funds from Sternberg's CDs on a number of occasions. She further admitted that Raiford was a customer whom she had helped on several occasions, indicating that Raiford was getting sicker with Parkinson's disease, and Wise was helping her do more and more. Wise admitted that she had taken money from Raiford's account and deposited it into her own.

The PSI set Wise's base offense level at 6, pursuant to U.S.S.G. § 2B1.1(a). Because the loss involved more than $120,000, Wise received a 10-level enhancement, pursuant to § 2B1.1(b)(1)(F). Among the enhancements Wise received was a two-level adjustment because she knew or should have known that the victims of the offense were "vulnerable victims" under U.S.S.G. § 3A1.1(b)(1). Her total adjusted offense level was set at 19. Wise's criminal history was category I, which, at offense level 19, set a guidelines imprisonment range of 30 to 37 months.

Wise first raised a general objection to all of the enhancements, arguing that, pursuant to Blakely, the enhancements were invalid because they were not charged

4

in the indictment or proven beyond a reasonable doubt to a jury. She also argued that the "vulnerable victim" enhancement was improper because (1) Sternberg's financial affairs were conducted by his able-bodied son; (2) Wise was the only person who handled Raiford's accounts and, therefore, the embezzlement was done because Wise thought that it would not be easily detected; (3) Wise's conduct was motivated by pure opportunity, not the vulnerability of the victims; and (4) Wachovia was the true victim and, as it is a bank, was not vulnerable.

In response to the Supreme Court's decision in <u>Booker</u>, Wise filed a memorandum, arguing that the holding in <u>Booker</u> should not be applied to her sentencing because it would disadvantage her and, therefore, violate her Fifth Amendment due process rights. Wise's argument was that the remedial portion of <u>Booker</u>, making the guidelines advisory, was unexpected and would result in a higher sentence for her than would the application of the guidelines as mandatory.

At sentencing, Wise explained that, since the guidelines were mandatory at the time when she committed her offense and pled guilty, and the mandatory application of enhancements found under the guidelines violated her Sixth Amendment right in light of <u>Booker</u>, all of the enhancements being made to her sentence were unconstitutional. However, she argued that the application of the remedial portion of <u>Booker</u>, which rendered the guidelines advisory, should not be

5

applied to her sentence because to do so would bring the enhancements back into play, to her disadvantage, and violate her due process rights. In the event that the court did not agree with her due process argument, Wise asked the court to consider that this was her first criminal offense and that she was not likely to be a recidivist, and to consider further that she voluntarily resigned from her job at the bank and has shown remorse and a guilty conscience.

The government characterized Wise's argument as an ex post facto challenge and argued that Booker was a judicial decision not subject to ex post facto challenges. As to the due process and fair notice concerns, the government argued that Wise was mistakenly arguing that the statutory maximum sentence was her guideline range, when instead, the actual statutory maximum sentence for bank fraud was 30 years, which Wise knew because the court had informed her of the maximum sentence at the plea colloquy.

The district court found, inter alia, that the vulnerable victim was applicable. As to Wise's due process challenge, the court stated that "it just seems to me that those [two majority opinions in Booker] have to go hand and hand. . . . Now they are separate opinions, but clearly they were worked out as a package." It further agreed with the government's position that judicial decisions do not create "a lack of due process." The court then decided that it would sentence Wise under Booker,

6

and calculated a guideline range of 24 to 30 months' imprisonment, based on offense level 17 and criminal history category I. Wise reiterated her argument concerning other factors that the court should take into consideration when imposing a sentence, and the government stated that "a sentence within the guideline[s], the 24 to 30 months, is clearly reasonable." The court then imposed a 24-month sentence on each of the 15 counts, to run concurrently, and imposed $198,227.85 in restitution.

## I. Wise's Ex Post Facto/Due Process Challenge

On appeal, Wise argues that she has a due process right to prevent the retroactive application of Booker's remedial holding because her offense and plea were entered before Booker, and an advisory application of the guidelines undoes the benefit of her plea and works to her disadvantage. Wise further argues that ex post facto concerns are raised because the retroactive application of a judicially rewritten sentencing statute is the equivalent of retroactively applying penal legislation. Finally, she argues that the guidelines should be applied, consistent with Blakely,[1] in a binding fashion because she relied upon Blakely when determining her statutory maximum sentence and deciding to enter a plea. Her

---

[1] Wise appears to argue that, under Blakely, any extra-verdict enhancements are in violation of her Sixth Amendment rights. Nothing in Blakely, however, applies to the federal Sentencing Guidelines. It was Booker that extended a principle from Blakely to the Sentencing Guidelines. Her cites to Blakely in this regard are, therefore, in error.

7

position is essentially that, after <u>Booker</u>: (1) all of the sentencing enhancements made by the judge violated her Sixth Amendment right to a jury; and (2) the guideline range, as calculated after the enhancements are removed, should be binding and mandatory on the sentencing judge, not advisory as it is post-<u>Booker</u>.

We review questions of constitutional law <u>de novo</u>. <u>United States v. Brown</u>, 364 F.3d 1266, 1268 (11th Cir. 2004). In <u>Bouie v. City of Columbia</u>, 378 U.S. 347, 353 (1964), the Supreme Court held that judicial enlargement of a criminal statute, applied retroactively, violated the Due Process Clause because it was unforeseeable and like an <u>ex post facto</u> law. The Supreme Court later clarified <u>Bouie</u>, holding that, while the Ex Post Facto Clause[2] does not of its own force apply to the Judicial Branch, the Due Process Clause encompasses the <u>ex post facto</u> principle of fair warning. <u>Rogers v. Tennessee</u>, 532 U.S. 451, 462 (2001).

Accordingly, as we have held, Wise's argument on appeal is not an <u>ex post facto</u> issue, but rather, an issue of whether Wise had fair warning. See <u>United States v. Duncan</u>, 400 F.3d 1297, 1307 (11th Cir. 2005) <u>petition for cert. filed</u>, <u>Duncan v. U.S.</u>, — S.Ct. — , 2005 WL 2493971 (U.S. Oct 11, 2005). In <u>Duncan</u>, the defendant argued that, if <u>Booker</u>'s remedial holding, rendering the guidelines advisory, were applied retroactively, his maximum sentence would be increased

---

[2] The Ex Post Facto Clause provides that: "No Bill of Attainder or ex post facto Law shall be passed." U.S. Const. Art I Sec. 9.

8

beyond that authorized by the jury's verdict.  Id.  We rejected that argument, noting that (1) the U.S. Code informed the defendant, at the time when he committed his offenses, that he faced a maximum of life, and (2) the guidelines at the time further gave notice that a judge would engage in fact-finding to determine his sentence.  Id.  Ultimately, we held that the defendant's due process rights to fair warning were met because, at the time of the defendant's criminal conduct, the state of the law was that the U.S. Code set the maximum sentence, even though the guidelines were mandatory.  Id. at 1308.

Recently the Ninth Circuit, relying in part on Duncan, persuasively rejected a nearly identical argument to the one that Wise makes here for three reasons: (1) it was in direct conflict with the Supreme Court's instruction that both Booker opinions be applied retroactively to cases on direct review; (2) Ninth Circuit precedent held that Bouie did not apply to retroactive sentencing enhancements; and (3) the defendant was on notice that his sentence could be based on judicial determinations and set within the applicable statutory maximum.  United States v. Dupas, 419 F.3d  916 (9th Cir. 2005).

Wise attempts to distinguish her situation from the one in Duncan by arguing that, in Duncan, the defendant had been convicted and sentenced long before the Supreme Court decided Blakely and, therefore, he could not have had

9

any reliance on its holding, like Wise did. Furthermore, she argues that, unlike the defendant in Duncan, she preserved her due process challenge at sentencing.

Wise's distinctions are unavailing, and, like the defendants in Duncan and Dupas, her due process right to fair warning was not violated. Here, Wise's sentence, based on the enhancements that were then binding on the judge, was 24 months' imprisonment. Losing the extra-verdict enhancements, but making the base offense level binding on the judge, Wise argues that her guidelines' range would be 12-18 months' imprisonment. However, like in Duncan and Dupas, Wise was on notice of her statutory maximum sentence and that her ultimate sentence would be based on judicial determinations and set within that statutory maximum. Wise's conviction under § 1344, provided a statutory maximum of 30 years' imprisonment. See 18 U.S.C. § 1344. According to the indictment, all of Wise's offense conduct took place prior to Blakely, and, as we noted in Duncan, prior to Blakely "every federal court of appeals had held that Apprendi [ v. New Jersey, 530 U.S. 466 (2002)], did not apply to guideline calculations made within the statutory maximum." See Duncan, 400 F.3d at 1308 (quotation and citations omitted). Thus, the law at the time of Wise's offense conduct was that the U.S. Code was the source for determining a maximum statutory sentence. Id. Accordingly, like with the defendant in Duncan, we conclude that Wise had

sufficient warning to satisfy the due process concerns articulated in Rogers v.

Tennessee." Id.

## II. Vulnerable Victim Enhancement

Next, Wise argues that there was no evidence presented to support the

court's finding that she knew or should have known that Sternberg or Raiford was

a vulnerable victim. She argues that she never initiated any contact with Sternberg,

and, in any event, it was Sternberg's son who was responsible for his finances. As

to Raiford, Wise argues that she had assisted Raiford on other financial matters

before embezzling from her and, as a result, had authorization to handle some of

Raiford's transactions, making Wise's conduct difficult to detect. As such, Wise

argues, she did not target Raiford because of her age or illness, but because of

opportunity alone.

As a preliminary matter, even after Booker, we continue to review a district

court's guideline calculations to ensure that the calculation is accurate. United

States v. Crawford, 407 F.3d 1174, 1179 (11th Cir. 2005). "The district court's

application of § 3A1.1 presents a mixed question of law and fact, which we review

de novo." United States v. Amedeo, 370 F.3d 1305, 1317 (11th Cir. 2004). "The

district court's determination of a victim's 'vulnerability' is, however, essentially a

factual finding to which we give due deference." Id. (citation and quotation

11

omitted).  The Supreme Court's decision in <u>Booker</u> did not alter the standards of review for guidelines issues.  <u>United States v. Phillips</u>, 413 F.3d 1288, 1292 n.3 (11th Cir. 2005).

Pursuant to § 3A1.1(b)(1), a two-level enhancement applies if "the defendant knew or should have known that a victim of the offense was a vulnerable victim."  U.S.S.G. § 3A1.1(b)(1).  As set forth in the commentary, for purposes of subsection (b), "vulnerable victim" means "a person (A) who is a victim of the offense of conviction . . .; and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct."  U.S.S.G. § 3A1.1, comment. (n.2).

In <u>United States v. Yount</u>, 960 F.2d 955, 957 (11th Cir. 1992), we explained that § 3A1.1(b) "appears to require that the victim of the offense must have been unusually vulnerable and specifically targeted in the offense."   There, the defendant embezzled money from trust accounts of the elderly, all of whom required assisted living.  <u>Id.</u> at 956.  We stated that "[t]he record in this case demonstrates that the five trust accountholders were very old, infirm, and no longer capable of managing their own financial affairs.  We cannot imagine any group that would be more 'unusually vulnerable.'" <u>Id.</u> at 957.

With respect to at least one of the victims, Raiford, <u>Yount</u> is instructive.  The

12

facts indicate that Wise was aware that Raiford lived in a retirement home, suffered from Parkinson's, and required assistance with her finances. Wise suggested that Raiford have her bank statements sent directly to Wise, meaning that Raiford had no knowledge of her account activity. It even appears that Wise told Raiford that the $200,000 that she had received for selling her home was not enough money to invest, giving Wise an opportunity to fraudulently transfer over $127,000 of it to her own accounts. It was not clearly erroneous for the district court to find that the "pure opportunity" that Wise had was occasioned by Raiford's dependency, trust, and physical and mental condition, coupled with Wise's personal knowledge and control of Raiford's bank statements and accounts. As in Yount, it is hard to imagine someone more "unusually vulnerable" to this crime than Raiford, and it was not clearly erroneous for the district court to find that Wise knew or should have known that, and took advantage of it in the worst possible way by garnering Raiford's trust and then stealing from her account. Because the vulnerable victim enhancement was properly applied with regard to Raiford, we find it unnecessary to decide whether it was properly applied as to Sternberg.

### III. Reasonableness of Wise's Sentence

Wise argues that the district court's sentence was unreasonable because it sentenced her within the guideline range as calculated and, according to Wise,

13

must not have considered the mitigating factors that she brought to the court's attention, such as that this was her first conviction and she was unlikely to be a recidivist.

Pursuant to the Supreme Court's instructions in <u>Booker</u>, we review a district court's sentence, imposed after consulting the guidelines and considering the factors set forth at 18 U.S.C. § 3553(a), for reasonableness. <u>Booker</u>, 543 U.S. at ___, 125 S.Ct. at 767; <u>see also</u> <u>United States v. Winingear</u>, 422 F.3d 1241, 1244 (11th Cir. 2005) ("[a]fter the district court has accurately calculated the Guideline range, it 'may impose a more severe or more lenient sentence' that we review for reasonableness.") (citation omitted). Among the factors that a district court should consider are the nature and circumstances of the offense, the history and characteristics of the defendant, the need for adequate deterrence and protection of the public, the pertinent Sentencing Commission policy statements, and the need to avoid unwarranted sentencing disparities. <u>See</u> 18 U.S.C. § 3553(a)(1)-(7).

In the instant case, the district court consulted the guidelines, which recommended a sentence of between 24 and 30 months' imprisonment, and then it proceeded to determine what a "reasonable decision" would be. The court had before it Wise's memorandum, setting forth arguments in favor of a lighter sentence, as well as her arguments at sentencing regarding her criminal history,

14

likelihood of recidivism, the fact that she had showed remorse, and her level of cooperation. The government believed that a sentence within the guideline range was reasonable, given that Wise had committed a serious bank fraud involving almost $200,000. On the basis of the foregoing, the district court believed that a 24-month sentence was appropriate. Given the circumstances of Wise's crime, involving the victimization of the elderly, abuse of trust, and 15 counts of fraud involving a substantial sum of money, as well as the fact that she was a first-time offender who had showed remorse and cooperated with the investigation, we conclude that a 24-month sentence, the lowest sentence recommended by the Sentencing Commission, appears very reasonable. See Winingear, at 1246.

On the basis of the foregoing, we conclude that the district court committed no reversible error when sentencing Wise. We, therefore, affirm.

**AFFIRMED.**