In the

# United States Court of Appeals

### For the Seventh Circuit

No. 05-1781

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MILO FARRIS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 CR 3—**James F. Holderman**, *Judge.*

ARGUED FEBRUARY 7, 2006—DECIDED MAY 25, 2006

Before BAUER, RIPPLE, and WOOD, *Circuit Judges.*

BAUER, *Circuit Judge.* Milo Farris pleaded guilty to two counts of sending threatening communications through the U.S. mail. The district court sentenced him to consecutive terms of sixty months on both counts. Farris challenges the total sentence of 120 months on due process and reasonableness grounds. We affirm.

## I. Background

Farris and his family live in a Chicago neighborhood with a high level of gang and drug activity. After the police failed to satisfy him with their response to his concerns about local crime, Farris mailed letters to the principals of five

different Chicago schools. Sent between September 15 and 17, 2003, the letters contained threats to kill unnamed students and one unnamed teacher. Each letter bore the return address of a residence where Farris had observed drug trafficking. In response to the threats, the schools suspended all outdoor activity, increased security, formulated alternate evacuation plans, detailed teachers to assist students' arrival and departure, and directed that the principals personally open all mail. These precautionary measures remained in effect for two weeks.

On March 31, 2004, the grand jury returned a five-count indictment against Farris for sending threatening communications through the U.S. mail, in violation of 18 U.S.C. § 876(c). Count One charged him with mailing to one school a threat to injure a student and a teacher. Counts Two through Five charged him with mailing to four other schools a threat to kill one student. On May 7, 2004, Farris pleaded guilty to Counts One and Two and stipulated to committing the offenses charged in Counts Three, Four, and Five.

At the March 15, 2005, sentencing hearing, the district court imposed a four-level enhancement for substantial disruption of public and governmental functions or services, a two-level enhancement for the large number of vulnerable victims, and a three-level enhancement for one victim's status as a government employee. The court sentenced Farris to consecutive terms of sixty months for Counts One and Two. He appealed the total sentence of 120 months' imprisonment.

## II. Discussion

Farris claims on appeal that his sentence violates the Due Process Clause of the Fifth Amendment because he was sentenced post-*Booker* for pre-*Booker* criminal conduct. He also claims that the sentence is unreasonable because the district court failed to consider the appropriate sentencing

factors and to provide a reasoned explanation of the sentence.

## A. Due Process

Article I of the U.S. Constitution provides that neither Congress nor the states shall pass an "ex post facto Law." *See* U.S. Const. art. I, § 9, cl. 3; art. I, § 10, cl. 1. Although the Ex Post Facto Clause limits the legislature instead of the judiciary, "limitations on *ex post facto* judicial decisionmaking are inherent in the notion of due process." *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001). In the context of judicial decisionmaking, a defendant has "a right to fair warning of that conduct which will give rise to criminal penalties." *Marks v. United States*, 430 U.S. 188, 191 (1977). Farris claims that the Supreme Court, in *United States v. Booker*, 543 U.S. 220 (2005), altered sentencing law in a manner detrimental to him and thereby violated his due process right to fair warning. We review due process challenges involving pure legal questions *de novo. United States v. Sasson*, 62 F.3d 874, 889 (7th Cir. 1995).

In September 2003, when Farris committed these crimes, the U.S. Sentencing Guidelines were mandatory. *See* 18 U.S.C. § 3553(b)(1); *see also United States v. Watts*, 519 U.S. 148, 160 (1997) (Stevens, J., dissenting). In *Apprendi v. New Jersey*, the Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). Based on the evident application of *Apprendi* to the guidelines, Farris claims, the highest possible penalty he faced in September 2003 was forty-six months, the maximum sentence within the applicable guidelines range based on his indictment and without judicially-imposed sentencing enhancements.

Between Farris's commission of the crimes and the sentencing hearing, the Supreme Court changed federal sentencing law by rendering the guidelines advisory. *See Booker*, 543 U.S. at 232. Farris claims that the remedy of an advisory guidelines regime, which permits district courts to sentence defendants on the basis of facts neither stipulated to nor found by a jury, unconstitutionally exposed him to a longer maximum sentence than the one he faced in September 2003.

As we have previously held, however, the remedial holding in *Booker* does not support a due process claim predicated on ex post facto principles. *United States v. Jamison*, 416 F.3d 538, 539 (7th Cir. 2005). Farris disputes the validity of *Jamison*, which rested on two main premises: (1) that the Supreme Court expressly directed that *Booker* should apply to cases on direct review; and (2) that the U.S. Code provided sufficient fair warning of the possible penalties. First, the Supreme Court expressly provided that both its Sixth Amendment holding, applying *Blakely* to the guidelines, and the remedial holding, rendering the guidelines advisory, applied "to all cases on direct review." *Booker*, 543 U.S. at 268. Accepting Farris's position would effectively negate the retroactive application of the remedial holding because all defendants sentenced post-*Booker* for pre-*Booker* crimes would then have a successful due process claim requiring remand for resentencing. We decline "to hold that the Supreme Court ordered us to violate the Constitution." *United States v. Rines*, 419 F.3d 1104, 1106 (10th Cir. 2005).

Rather, the ex post facto principle inherent in due process has been summarized as "giving people 'fair warning' of the legal consequences that their actions will have." *United States v. Paulus*, 419 F.3d 693, 698 (7th Cir. 2005) (quoting *United States v. Lanier*, 520 U.S. 259, 266 (1997)). Our fair warning analysis focuses on the time that the defendant

engaged in the criminal acts. *Id.* (citing *Lanier*, 520 U.S. at 267). We held in *Jamison* that the remedial portion of *Booker* could apply retroactively without constitutional difficulty because the defendant had been given fair warning that distributing cocaine was punishable by "up to twenty years, as spelled out in the United States Code." 416 F.3d at 539. Here, the particular combination of the crimes committed, Farris's criminal history, and the possible applicable enhancements subjected him to a sentence within a guidelines range of 100 to 125 months' imprisonment under the U.S. Code. Farris understood and signed the plea agreement, which specified that the Code provisions then in effect applied to his sentencing. The agreement also expressly referenced each of the offense level enhancements later imposed by the district court, so that Farris had fair warning of the possibility of higher sentence that they entailed.

Nonetheless, Farris claims that he also properly had notice of the Sixth Amendment as construed by the *Apprendi* Court. Reading the U.S. Code in light of *Apprendi*, he argues, led him to believe that his highest possible sentence was forty-six months. The Sixth Amendment principle first announced in *Apprendi*, however, did not apply to the U.S. Sentencing Guidelines until the *Booker* decision in January 2005. That *Apprendi* may have foreshadowed *Booker* does not alter the established state of the law in September 2003, when Farris committed the crimes. At that time, Farris could have been certain about only one fact of his sentencing: the 120-month statutory maximum, which ultimately was the exact term to which he was sentenced. *See United States v. Lata*, 415 F.3d 107, 112 (1st Cir. 2005). Any other assumptions he made about guideline calculations would have been far more indefinite. *See id*. Although Farris's application of the *Apprendi* reasoning to the federal guidelines would have been prescient, it did not negate the guidelines' validity at the time of the crimes or their applicability to his sentencing.

Farris essentially seeks the benefit of a state of law that never existed; he wants "a sentence that comports with the Sixth Amendment requirements of *Booker*, but wants to avoid the possibility of a higher sentence under the remedial holding of *Booker*." *Jamison*, 416 F.3d at 539; *see also United States v. Dupas*, 419 F.3d 916, 920 (9th Cir. 2005). A person in Farris's position on the date of the crimes, with a post-*Apprendi*, pre-*Blakely* outlook, could not reasonably be surprised by this sentence.[1] Farris had fair notice, when committing the crimes and when entering the plea, that his sentence could be based on a judicial determination within the applicable guidelines range. *See Dupas*, 419 F.3d at 921. His due process claim fails.

## B. Reasonableness

It is undisputed that Farris's sentence of 120 months was within the properly calculated guidelines range and is therefore entitled to a rebuttable presumption of reasonableness. *See United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). The defendant can rebut this presumption only by demonstrating that the sentence is unreasonable when measured against the factors in 18 U.S.C. § 3553(a). *Id.* Farris claims that the district court failed

---

[1] Every Court of Appeals to consider the issue has reached the same conclusion. *See United States v. Pennavaria*, No. 04-3556, 2006 WL 1061956, at *4 (3d Cir. Apr. 24, 2006); *United States v. Alston-Graves*, 435 F.3d 331, 343 (D.C. Cir. 2006); *United States v. Vaughn*, 430 F.3d 518, 525 (2d Cir. 2005); *United States v. Egenberger*, 424 F.3d 803, 806 (8th Cir. 2005); *United States v. Rines*, 419 F.3d 1104, 1106-07 (10th Cir. 2005); *United States v. Dupas*, 419 F.3d 916, 921 (9th Cir. 2005); *United States v. Lata*, 415 F.3d 107, 112 (1st Cir. 2005); *United States v. Scroggins*, 411 F.3d 572, 576 (5th Cir. 2005); *United States v. Duncan*, 400 F.3d 1297, 1308 (11th Cir. 2005).

to consider applicable § 3553(a) factors and to provide a sufficient statement of reasons for the sentence.

After *Booker*, the district court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining what sentence to impose. *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005). Despite Farris's claim that the district court did not list the factors that affected its decision, the court was free to apply the factors "not in checklist fashion but instead in the form of an adequate statement of the judge's reasons, consistent with § 3553(a), for thinking the sentence he has selected is indeed appropriate for the particular defendant." *Id.* A fair reading of the record in this case reveals that the court considered all of the information presented by the parties, including the information Farris claims was neglected.

The short statement by the district court touched on the nature and circumstances of the offense by stating "this was a horrendous thing that you did for and to the community, the parents of the children, the children, the administrators, the teachers, it was a horrible thing." *See* 18 U.S.C. § 3553(a)(1). Additionally, this statement spoke to the seriousness of the offense and, by extension, the sentence necessary for just punishment. *See* 18 U.S.C. § 3553(a)(2)(A). The court considered the defendant's history and characteristics, commenting that Farris demonstrated "potential" with his high school graduation and college matriculation. *See* 18 U.S.C. § 3553(a)(1). After "looking at the circumstances, looking at [his] background," the court noted that Farris "used crime as a way of expressing [him]self, and [he] had done it before," a reference to his prior conviction for aggravated sexual abuse. By recommending his participation in the sexual offender treatment program and in mental health counseling, the court appreciated the need for a sentence that provided Farris with appropriate correctional treatment. *See* 18 U.S.C. § 3553(a)(2)(D). The factors considered were sufficient to

support the sentence; the court was not required to "write a comprehensive essay applying the full panoply of penological theories and considerations, which is to say everything invoked or evoked by § 3553(a)." *Dean*, 414 F.3d at 729.

Farris next faults the district court for not including intent in its analysis of the crimes' seriousness. It is undisputed that Farris never intended to carry out the threats; his aim was to alert the police to neighborhood crime. This argument has little import on these facts, however, because the guidelines provide for the consideration of intent as a separate enhancement. *See* U.S.S.G. § 2A6.1(b)(1) ("If the offense involved any conduct evidencing an intent to carry out such threat, increase by 6 levels"). Because of the government's decision not to seek this enhancement, the process accounted for Farris's lack of intent. Additionally, some of the district court's comments at the sentencing hearing could be understood as taking Farris's intent into account. In recommending that Farris participate in counseling, for instance, the court stated that the treatment would assist "in determining what it really is that caused you to do these horrendous acts."

Finally, Farris claims that the district court, in calculating his criminal history, improperly considered pending state charges against him for predatory criminal sexual assault, aggravated criminal sexual assault, criminal sexual assault, and aggravated criminal sexual abuse. This argument rests on the following comment by the court: "I also recommend that you participate in the sexual offender treatment program offered by the Bureau of Prisons." Although Farris construes this comment as evidence that the court improperly considered the state charges, this interpretation is problematic. First, Farris did not object to the comment at the sentencing hearing. Second, other aspects of Farris's criminal history—namely, his 1992 conviction for aggravated sexual abuse and the

alarming sexual letter to his niece—equally support a recommendation of sex offender treatment. We cannot presume from this record that the district court was disingenuous; to the contrary, the facts provided a reasonable relation between the § 3553(a) factors and the treatment ordered.

### III. Conclusion

For the foregoing reasons, we AFFIRM the sentence imposed by the district court.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*